UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
—————————————————————

PETER JAY SPERONI,

            Plaintiff,

v.

NRG ENERGY and IAN FINN, individually,

            Defendants.

—————————————————————

**VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL**

Case No.: 1:15-cv-41

Plaintiff, Peter Jay Speroni ("Plaintiff" or "Mr. Speroni") by and through his attorneys, The Reddy Law Firm, Prathima Reddy Esq. complains against Defendant NRG Energy ("Defendant NRG") and Defendant Ian Finn, individually ("Defendant Finn") and hereby alleges the following:

## NATURE OF THE ACTION

1. This is an action brought pursuant to TITLE VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§§ 2000 et seq. ("TITLE VII") and New York State Human Rights Law, Executive Law Sections 290 et seq. ("NYSHRL").

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court by 28 U.S.C § 1331, 1343. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate Plaintiff's claims under New York state law.

3. Venue is proper in the Western District pursuant to 28 U.S.C. §1391 (b) (2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

1

## THE PARTIES

4. Mr. Speroni is a homosexual male who resides in the County of Erie, State of New York.

5. NRG ENERGY ("NRG" or "Defendant NRG") provides energy services to operate, maintain and repair electric-generation facilities.

6. Mr. Speroni has been employed at BidURenergy ("BUE") and its sister company, Energy Curtailment Specialists ("ECS").  He is an employee within the definition of "employee" under TITLE VII and NYSHRL.

7. BUE and ECS, both located at 4455 Genesee Street, Buffalo, NY are both wholly owned and operated by Defendant NRG.

8. Defendant NRG is an "employer" within the definitions of TITLE VII and NYSHRL.

9. Ian Finn ("Defendant Finn") is a heterosexual male and the Senior Sales Director at ECS, and acts as Mr. Speroni's direct supervisor.

## PROCEDURAL PREREQUISITES

10. Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which cross-filed with the New York State Division of Human Rights ("DHR") on or about July 1, 2014.  The EEOC issued a Notice of Right to Sue with regard to his claims on or about December 19, 2014.

11. Plaintiff files this Complaint fewer than ninety (90) days since he received his Notice of Right to Sue letter from the EEOC.

12. Therefore, Plaintiff now commences this timely action.

**FACTUAL ALLEGATIONS**

13.  Mr. Speroni began working at ECS in September 2011 as a researcher.

14. Within three (3) months of working for the company, Mr. Speroni had been awarded employee of the week three (3) times, and was nominated as "Student Employee of the Year at SUNY Buffalo State College".

15. On or about March 21, 2012, Mr. Speroni was asked to work with a Director Jeffrey Bonerb ("Mr. Bonerb"). Mr. Speroni was asked to design a new research department, specifically to present ideas to re-design and re-configure the research department to address insufficiencies. Mr. Speroni's desk was moved into Mr. Bonerb's office, and he worked diligently in this role, successfully fulfilling all goals.

16. During Mr. Speroni's first day of working with Mr. Bonerb, the word "faggot" was used seven (7) times during the workday.

17. Defendant Finn would also repeatedly use the word "faggot" to refer to both employees on the floor, as well as customers.

18. On one specific day, Mr. Speroni tallied that the word "faggot" was used a total of thirty-three (33) times by the end of the workday.  He was rightfully offended.

19. Mr. Speroni was later threatened by Defendant Finn, being told, "Jay, you better not say or repeat anything that you hear in this office, and if we catch you saying anything at all, you will be blacklisted and not able to move up in this company and will most likely be fired.  Do not cross us."

20. In June 2012, Mr. Speroni presented his ideas to sales manager, Dan Phoel ("Mr. Phoel").   Mr. Bonerb was present at that meeting. They were both

3

impressed with Mr. Speroni's design, and asked him to implement the program. Mr. Speroni was told that he would be able to move his desk to the sales floor, and away from Defendant Finn.  Mr. Speroni of course agreed to this proposal in an effort to escape from Defendant Finn.

21. Mr. Speroni has always made it known that he desired a full-time position upon graduation.

22. Mr. Speroni continued to work in a research/sales assistance position until approximately December 2013.

23. Around or about December 2013, Mr. Speroni requested to be allowed to work in sales until graduation.  Mr. Phoel agreed to his request, but Mr. Speroni received a call soon after from Human Resources Director, Beth Marcincowski ("Ms. Marcincowski). She indicated that the company President Jim Krysakowski ("President Krysakowski") wanted Mr. Speroni to continue in the research area by joining a team for a new department.

24. The department was called Pre-Operations, and was headed by Justin Smith ("Mr. Smith").

25. Mr. Speroni's tasks in this department would include designing, implementing, and assisting the supervision of a new department called the "Transition Team".

26. Mr. Speroni explained to Ms. Marcincowski that he wanted the position in sales in order to make commissions and feel more financially secure since he had not received a permanent salaried position yet. Ms. Marcincowski told Mr. Speroni that he would be given a raise of $2.

4

27. Mr. Speroni agreed to this proposal, and began working in the "Pre-Operations" department.

28. In his new role, Mr. Speroni supervised Brittni Lohouse ("Ms. Lohouse") and Scott Shugarts ("Ms. Shugarts"), as well as new hires.

29. In February 2013, Mr. Speroni heard Ms. Lohouse and Mr. Shugarts talking about another employee, saying that they felt she was a lesbian because of the way she acted. Mr. Lohouse continued to make comments regarding how homosexual individuals shouldn't be allowed to have children, and that the movie Brokeback Mountain was "disgusting because it showed two men having sex."

30. Offended and taken aback by the comments, Mr. Speroni immediately contacted Mr. Smith, notifying him of the inappropriate and offensive comments that were said in the workplace.

31. Mr. Smith's response was to tell him to "put your headphones on and ignore it."

32. Mr. Speroni then contacted the Human Resources Assistant, Jeffery Ricci ("Mr. Ricci") regarding the inappropriate and discriminatory comments in the workplace.

33. A few days later, Ms. Lohouse again verbally attacked Mr. Speroni regarding his own sexual orientation.

34. In response to the persistent and frequent discriminatory comments about homosexuals, Mr. Speroni then filed a formal complaint with Ms. Marcincowski.

35. On or about February 22, 2013, Mr. Speroni spoke with Ms. Marcincowski regarding Ms. Lohouse, Mr. Shugarts, and Mr. Tomaka's discriminatory comments and the company's failure to take effective remedial action.

36. During the meeting, Mr. Speroni described the continuous treatment he endured since his employment began—the persistent hostile environment that surrounded him in the workplace.  He explained how frequently the word "faggot" was commonly used, and other discriminatory comments that were used, including, "I thought fags have AIDS." Mr. Speroni described how he felt violated, scared, and emotionally harmed by the environment and how it was affected his employment.

37. Ms. Marcincowski responded by saying, "Jay, I knew you were different the day you come into interview and that some consider me old fashion, but it was my generation when men started to make the decision to be gay".  Mr. Speroni re-iterated that the comments severely affected him emotionally and mentally but Ms. Marcincowski simply told him that he was being too sensitive.  She also defended the actions of Defendant Finn by claiming he is  "simply just socially awkward".

38. Ms. Marcincowski asked Mr. Speroni if he wanted to pursue the matter against Mr. Finn further. Mr. Speroni told her that he wanted to and was terrified, due to the prior threats made against him by Defendant Finn.

39. Ms. Marcincowski informed Mr. Speroni that she would alert legal counsel, Bill Chen ("Chen") and President Kyrsokowsk; that an investigation would be commenced and he would be protected.

40. The following day, Mr. Smith called Mr. Speroni into the office and informed him that they would be promoting Ms. Lohouse to the Pre-Operations department.

41. Mr. Smith also informed Mr. Speroni that his desk was being moved to the other side of the office, where BUE operated. Mr. Speroni's new desk was directly seated next to Defendant Finn's assistant.

42. At his new desk site, Mr. Speroni directly encountered Defendant Finn at least fifteen (15) times per day. Mr. Speroni was again subjected to the hostile work environment.

43. Mr. Speroni addressed these ongoing issues with Ms. Marcincowski. He also addressed the failure to receive the $2 raise that was promised to him. Ms. Marcincowski failed to take any corrective action.

44. After multiple pay periods, Mr. Speroni still did not receive the promised raise. He again inquired with Ms. Marcincowski, who stated, "Jay, I know why you are here, Jim has decided to deny your raise because we feel that you are using this company as a stepping stone. We will, however, give you a nice offer in May, when you graduate that is much more than this $2 raise, and it will be based upon your work ethic and your college education and grades."   Mr. Speroni graduated summa cum laude, with a 4.0, sixth in his class at SUNY Buffalo State but was never given the position.

45. Mr. Speroni also reported to Ms. Marcincowski that he was upset about his new desk location, directly next to Defendant Finn's assistant, and that was still being subjected to discriminatory conversations and a hostile work environment. Ms. Marcincowski told Mr. Speroni that he was "being overly sensitive about the matter, and that he had a lot of offer if only he brushed more things off his shoulder".

46. Mr. Speroni was shocked by what was happening, and was too emotionally distressed to properly focus on his work. Mr. Speroni was constantly worried about what offensive statement would be made next.

47. Mr. Speroni was provided with no resolution for his complaints, but nevertheless, worked to the best of his abilities on the Transition team.

48. In March 2013, Mr. Speroni was called into Mr. Smith's office, and was told that they would not be offering him a permanent position in Pre-Operations or the Transition team because there wasn't any room for him. Mr. Speroni was shocked because he had designed the team, and worked diligently to maintain structure in the departments.

49. Mr. Speroni spent the next two (2) months in isolation. Mr. Speroni received no direction, no new tasks, no supervision, no projects, no conversations, and no invited to department meetings. This was a sharp contrast to Mr. Speroni's usual involvement.

50. Mr. Speroni was facing discrimination and retaliation that would ruin his career advancement. He began looking into positions at BUE hoping a change would help the current situation at ECS.

51. During his interview with the BUE research team, Mr. Speroni noticed that they were facing the same revenue loss as ECS, losses his program had successfully addressed. Mr. Speroni presented his PowerPoint presentation, displaying how it could prevent the loss of millions of dollars every year.

52. Mr. Speroni was asked to start implementing his system in BUE, and told that he would receive a job offer in the department within a week.

53. Mr. Speroni began his work at BUE but never given a structured position.   He was told to "just do whatever he felt was necessary." Corey Akios ("Mr. Akios") was Mr. Speroni's direct supervisor.

54. Immediately after his supposed hire at BUE, an email went out announcing that all researchers needed to use the system developed by Mr. Speroni.

55. A week later, Ms. Marcincowski informed Mr. Speroni that there was actually no formal offer, and that he needed to work for one (1) month to prove himself.

56. Mr. Speroni was bewildered.   He had already proven himself by the excellent system he had designed and implemented.   Both companies were taking advantage of his program.

57. Mr. Speroni contacted Ms. Marcincowski to complain about the unfair treatment.

58. A week later, Mr. Speroni contacted Mr. Akios to discuss why his offer was suddenly missing. Mr. Speroni was told that he would now receive his $2 raise, but that it would not be retroactive.

59. Although he qualified for all full-time employee benefits, Mr. Speroni was informed that he would not be given any of these benefits such as health insurance or vacation time.

60. Mr. Speroni inquired with Ms. Marcincowski regarding why these benefits were being withheld, since he was clearly qualified.   Mr. Speroni only finally received benefits on or about July 1, 2013.

61. Mr. Akios again informed Mr. Speroni that he would still have to prove himself in the department.   Mr. Speroni felt he was again being misled.

62. Mr. Speroni asked for an offer in another department where he would utilize his skills, and be recognized properly as an employee.

63. Mr. Speroni still had not received his promised raise.

64. When offered a position to become an hourly pricing analyst/admin. Mr. Speroni accepted the position and he started training to become a pricing analyst/admin in June 2013.

65. Matt Faulkner ("Mr. Faulkner"), who graduated at the same time as Mr. Speroni, was given an offer at NRG with a salary of $39,000 per year.

66. Mr. Speroni was upset, and asked Ms. Marcincowski why Mr. Faulkner received an offer and he did not. Mr. Speroni told Ms. Marcincowski that he graduated top of his class, summa cum laude, with a 4.0 grade point average, and was doing the same job as Mr. Faulker. Ms. Marcincowski told Mr. Speroni "Mr. Faulkner is a pricing analyst here and that's why." Mr. Speroni was again denied the salaried offer.

67. Mr. Speroni declined to continued training as a pricing analyst because it was then clear Defendant NRG would not offer him a permanent position in any department.

68. In September 2013, a research manager position became available. Mr. Speroni had originally been hired in research and has an extensive research and management based educational background. Mr. Speroni contacted Mr. Bonerb to apply for the position.

69. Mr. Bonerb wrote back, "Jay, sure, I have my assistant in my office who will be here during our talk and she keeps things very confidential" Mr. Speroni was unsure of the implication.

70. Mr. Speroni was eventually denied that position.

71. Mr. Speroni was then told he would be working directly with Mr. Finn, setting up conference calls and meetings for him. Mr. Speroni was shocked. He again would be subject to the hostile work environment with Mr. Finn and Mr. Bonerb. The harassment and discrimination would continue.

72. Starting in February 2014, Mr. Speroni would endure continuous harassment by Defendant Finn including being called "too sensitive", "grandiose" and "dramatic". Defendant Finn even stated, "Jay, you shouldn't be wearing purple to work. It makes you look soft, weak, and passive. You won't win any business that way" in front of the advisory team.

73. Mr. Speroni did not respond to these discriminatory comments and was offended by the personal attack on his sexuality.

74. Thereafter, his co-workers would subject Mr. Speroni to more offensive commentary.

75. At every turn, Mr. Speroni would report to NRG's Human Resources but remedial action was not taken.

76. In March 2014, when the working environment at NRG became unbearable, Mr. Speroni obtained legal counsel to address his concerns.   He then requested that he be able to work from home to address the serious health concerns he was experiencing as a result of the hostile work environment.

77. Upon his return to work, Mr. Speroni has experienced retaliation from Defendant NRG including but not limited to being removed from contest earnings, isolation, exclusion from supply side meeting, blocked from closing accounts and being moved to an inside representative team.

78. To date, the retaliation persists and is damaging to Mr. Speroni's emotional and professional welfare.

**FIRST CAUSE OF ACTION: DISCRIMINATION ON THE BASIS OF SEXUAL ORIENTATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANT NRG ENERGY**

79. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

80. Defendant engaged in practice of discrimination against Plaintiff in violation of NYSHRL on the basis of sexual orientation in the terms and conditions of his employment by:

    a. Subjecting him to a hostile work environment;
    b. Subjecting him to disparate treatment in the form of withholding terms, conditions, and privileges of his employment.

81. As a result of Defendant's illegal actions, Plaintiff has suffered a loss of past and future income in the form of loss of career opportunity, injury to his health, emotional distress, mental anxiety, damage to his reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**SECOND CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST DEFENDANT NRG ENERGY**

82. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

83. Plaintiff engaged in protected activity by making good faith complaints about the discrimination he was forced to endure during the course of employment.

84. Plaintiff was subject to retaliation as a result in the form of demotions; attempts to withhold vacation days; health benefits and raises; changes in position and title; and other adverse employment actions.

85. There was a casual connection between Plaintiff's engagement in protected activity and the retaliatory treatment he suffered.

86. Defendant engaged in a pattern of illegal retaliation because Plaintiff had complained of the discrimination, both formally and informally.

87. Defendant has no legitimate business reason for these actions.

88. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation against him, Plaintiff has suffered and will continue to suffer loss of past and future income in the form of salary and benefits, loss of career opportunity, injury to health, emotional distress, and damage to reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**THIRD CAUSE OF ACTION: DISCRIMINATION ON THE BASIS OF SEXUAL ORIENTATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST INDIVIDUAL DEFENDANT IAN FINN**

88. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

89. Defendant engaged in a practice of discrimination against Plaintiff in violation of NYSHRL on the basis of sexual orientation in the terms and conditions of his employment by:

    a. Aiding and abetting in the creation of a hostile work environment; and
    b. Aiding and abetting in the disparate treatment, and discipline.

90. As a result of Defendant's illegal actions, Plaintiff has suffered loss of past and future income in the form of raises and benefits, loss of career opportunity, injury to health, emotional distress, mental anxiety, loss of enjoyment of life, damage to his reputation and humiliation.

91. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**FOURTH CAUSE OF ACTION: RETALIATION ON THE BASIS OF SEXUAL ORIENTATION IN VIOLATION WITH THE NEW YORK STATE HUMAN RIGHTS LAW AGAINST INDIVIDUAL DEFENDANT IAN FINN**

92. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

93. Plaintiff engaged in protected activity by making good faith complaints about the discrimination he was forced to endure during the course of employment.

14

94. Plaintiff was subject to retaliation as a result in the form of demotions; attempts to withhold vacation days; health benefits and raises; changes in position and title; and other adverse employment actions.

95. There was a casual connection between Plaintiff's engagement in protected activity and the retaliatory treatment he suffered.

96. Defendant engaged in a pattern of illegal retaliation because Plaintiff had complained of the discrimination, both formally and informally.

97. Defendant has no legitimate business reason for these actions.

98. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation against him, Plaintiff has suffered and will continue to suffer loss of past and future income in the form of salary and benefits, loss of career opportunity, injury to health, emotional distress, and damage to reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**FIFTH CAUSE OF ACTION: DISCRIMINATION ON THE BASIS OF GENDER/SEXUAL ORIENTATION/GENDER STEREOTYPING IN VIOLATION OF THE TITLE VII AGAINST DEFENDANT NRG ENERGY**

99. Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

100. Defendant engaged in practice of discrimination against Plaintiff in violation of the TITLE VII on the basis of gender/sexual orientation/gender stereotyping in the terms and conditions of his employment by:

    a.    Subjecting him to a hostile work environment;

    b.    Subjecting him to disparate treatment in the form of withholding terms,

conditions, and privileges of his employment.

101.     As a result of Defendant's illegal actions, Plaintiff has suffered a loss of past and future income in the form of loss of career opportunity, injury to his health, emotional distress, mental anxiety, damage to his reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

**SIXTH CAUSE OF ACTION: RETALIATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT NRG ENERGY**

102.     Plaintiff repeats and re-alleges by reference each and every allegation contained in the above stated paragraphs, and incorporates the same as though fully set forth herein.

103.     Plaintiff engaged in protected activity by making good faith complaints about the discrimination he was forced to endure during the course of employment.

104.     Plaintiff was subject to retaliation as a result in the form of demotions; attempts to withhold vacation days; health benefits and raises; changes in position and title; and other adverse employment actions.

105.      There was a casual connection between Plaintiff's engagement in protected activity and the retaliatory treatment he suffered.

106.      Defendant engaged in a pattern of illegal retaliation because Plaintiff had complained of the discrimination, both formally and informally.

107.     Defendant has no legitimate business reason for these actions.

16

108.     As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation against him, Plaintiff has suffered and will continue to suffer loss of past and future income in the form of salary and benefits, loss of career opportunity, injury to health, emotional distress, and damage to reputation and humiliation. Plaintiff will continue to suffer these irreparable injuries and monetary damages as a result of Defendant's discriminatory practices unless and until this Court grants relief.

DATED:     Buffalo, New York
           January 12, 2015

*/s/ Prathima Reddy*
Prathima Reddy
The Reddy Law Firm
*Attorneys for Plaintiff*
455 Linwood Avenue
Buffalo, New York 14209
Office: (716) 725-0139
Fax: (716) 625-1519
Email: preddy@thereddylaw.com

## VERIFICATION

STATE OF NEW YORK        )
COUNTY OF ERIE           ) ss:


     PETER JAY SPERONI deposes and says that he is the Plaintiff in this action; that he has read the foregoing VERIFIED COMPLAINT and knows the contents thereof; that the same is true to the knowledge of deponent, except as to the matters therein stated to be alleged on information and belief, and that as to those matters, he believes them to be true.

_____
Peter Jay Speroni

Subscribed and sworn to before me
this ___ day of ___ , 2014.

JOHN C WILK
Notary Public - State of New York
No. 01WI6000477
Qualified in Erie County
My Commission Expires Dec. 15, 2017